UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ROSLYN HOLMAN, ) | Civil Action No.: 4:05-2727-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| CLEMSON UNIVERSITY, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.    INTRODUCTION

This is an employment discrimination case. Plaintiff is proceeding pro se. Plaintiff asserts a cause of action for retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[1]  Presently pending before the Court are Defendant's Motion for Summary Judgment (Document # 55), Plaintiff's Cross-Motion for Summary Judgment (Document # 58) and Plaintiff's Motion for Summary Judgment (Document # 74). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because these are dispositive motions, this report and

---

[1]In its Motion for Summary Judgment, Defendant argues for summary judgment as to race discrimination as well, in the event that Plaintiff meant to assert such a cause of action. However, in her response to Defendant's Motion, Plaintiff declines to respond to Defendant's arguments regarding race discrimination and specifically states "Plaintiff's civil action is based on Defendant's premeditated retaliation which resulted in wrongful termination as noted in April 14, 2005 Complaint . . . filed with EEOC." Plaintiff's Response at 11.  Thus, it appears that Plaintiff has not alleged a cause of action for race discrimination and the court need not address Defendant's arguments on that issue.  Nevertheless, out of an abundance of caution, to the extent Plaintiff does allege a cause of action for race discrimination, she has failed to present sufficient evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her based on her race.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

recommendation is entered for review by the district judge.

## II.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff began working as a Fiscal Technician I for Clemson University (the University) on December 8, 1998. Hammig Aff. at ¶ 3 (attached as Ex. 1 to Defendant's Motion). Plaintiff became a Fiscal Technician II on July 16, 2001. Id.

According to Defendant, Plaintiff's position was in the College of Agriculture, Forestry, and Life Sciences, Department of Agricultural and Applied Economics (which became known as the Department of Applied Economics and Statistics in 2003). Id. at ¶ 2, 3. Defendant asserts that Plaintiff worked in the Agribusiness Management Association (ABMA) program, which is funded by federal and state governments as part of the University's agricultural extension service. Id. at ¶ 4. Farmers could join the ABMA (Plaintiff refers to this as the "Farm Management Association") for an annual fee. Id. In return, the ABMA conducted financial analysis of their operations and provided technical assistance. Id. Plaintiff provided administrative support to the ABMA by taking the farmers' data and putting it into the computer for analysis. Id. and Plaintiff's Response at 3.

Plaintiff asserts that her position was not with the College of Agriculture, Forestry and Life Sciences, but with the Clemson Extension Public Service Program–Farm Management Associations. Plaintiff's Response at 8. However, as noted by Plaintiff, the "College of Agriculture, Forestry and Life Sciences has an agreement with the United States Department of Agriculture to organize and maintain at its institution a definite and distinct administrative division for the management and conduction of all Cooperative Extension work in agriculture and economics." Id. at 4. In addition, one of the exhibits cited by Plaintiff to support her contention that she did not work for the College of Agriculture, Forestry and Life Sciences actually states that the Department of Applied Economics

and Statistics, part of the College of Agriculture, Forestry and Life Sciences, performs outreach activities by providing "economic information to citizens, agricultural producers and agribusiness in South Carolina through the Clemson Cooperative Extension Service." Ex. K2 to Plaintiff's Response. Thus, it appears by Plaintiff's own evidence that her position fell under the College of Agriculture, Forestry and Life Sciences.

Plaintiff worked at Clemson's Pee Dee Research and Education Center (Pee Dee REC) in Florence, South Carolina. Hammig Aff. at ¶ 5. Through October of 2003, her supervisor was Chris Robinson, a Clemson University Extension Associate and ABMA Consultant. Id. In 2003, Chris Robinson resigned and his position was not replaced. Id. at ¶ 6. The Florence area ABMA members transferred their memberships to the Sumter office where Scott Mickey became their consultant. Id. According to Defendant, another fiscal technician already employed in Sumter was able to handle the tasks associated with the memberships that were transferred from Florence and Plaintiff was the only employee associated with the Department of Applied Economics and Statistics that was still located at the Pee Dee REC. Id.

Plaintiff asserts that Suzanne Coker also worked as a fiscal technician at the Pee Dee REC and still maintained an office there at the time of Plaintiff's termination. Plaintiff's Response at 4. The only evidence submitted by Plaintiff as support for this factual allegation is an email from an individual named Greg Clemson in which he asks Plaintiff to tell Coker to return her two keys and gate card, presumably for the Florence office. Ex. Q to Plaintiff's Motion. Plaintiff later asserts that Coker was supervised by Scott Mickey, who is in the Sumter office, as opposed to Chris Robinson, who was in the Florence office. Plaintiff's Response at 10. Plaintiff then asserts that "the other Fiscal Technician II" was transferred following their supervisor's resignation. Plaintiff's Response

-3-

at 12. It is not clear whether Plaintiff is referring to Suzanne Coker.

Due to budgetary constraints and Chris Robinson's resignation, Michael D. Hammig, Department Chair for the Department of Applied Economics and Statistics, recommended a reduction in force and elimination of Plaintiff's position on November 10, 2004. Hammig Aff. at ¶ 7. As a state supported institution of higher learning, the University was required to develop a Reduction-in-Force Policy (RIF Policy) to be followed for layoffs caused by reorganization, work shortage, or loss of funding. Marcus Aff. at ¶ 3 (attached as Ex. 2 to Defendant's Motion). The RIF Policy provides that the order of the reduction of force of covered employees shall be determined by the total number of retention points for each employee in a competitive class. Id. at ¶ 4. The employee in the competitive class with the fewest retention points is laid off first. Id. Under the RIF Policy, retention points are calculated based on the total scores of annual performance appraisals for the past two years and the length of continuous state service. Id. at ¶ 5.

As required by the RIF Policy and the State Budget and Control Board's Office of Human Resources (OHR) Regulation 19-719.04, a proposed Reduction in Force Plan (RIF Plan) was submitted to the Budget and Control Board's Office of Human Resources for review and approval on January 26, 2005. Id. at 7 and Ex. 2B to Defendant's Response. The RIF Plan provides, "as a result of loss of funding and the redirection of resources this reduction in force is necessary as a result of budgetary reductions combined with the closing of an office. This process will result in the elimination of the Fiscal Technician II for the Department of Applied Economics and Statistics located at the Pee Dee Rec office, Florence, South Carolina." Ex. 2B to Defendant's Response. The RIF Plan identifies the competitive area as the College of Agriculture, Forestry and Life Science and identifies the competitive class as Fiscal Technician Series. Id. The RIF Plan also lists the four

employees in the class of Fiscal Technician series and the retention credits for each employee. Id. Teri Elliott had 21 retention credits, Michael Stephens had 20 retention credits, Suzanne Coker had 13 retention credits and Plaintiff had 10 retention credits. Id. The RIF Plan also indicates that there were two positions that Plaintiff would have an opportunity to "bump" into. Id. These were related positions in other areas of the University that were held by either a probationary or a temporary employee. Id. and Marcus Aff. at ¶ 8.

By letter dated January 31, 2005, the Budget and Control's Office of Human Resources advised that the proposed RIF Plan was approved as procedurally correct. Ex. 2C to Defendant's Motion. Because Plaintiff had the lowest number of retention points in her competitive class, she was advised by letter dated March 2, 2005, that her position would be eliminated effective April 8, 2005. Ex. 2D to Defendant's Motion. The letter stated, "[d]ue to lack of funding, Public Services Activities has determined that the area can no longer support positions associated Applied Economics and Statistics at the Pee Dee Rec location." Id. The letter also offered Plaintiff the opportunity to "bump" into one of two Fiscal Technician II positions available in Clemson, South Carolina. Id. The letter informed Plaintiff that she must inform the Human Resources Office, in writing by March 12th, of her desire to accept either of the available positions. Id. It stated, "[f]ailure to notify our office of your decision regarding either of these positions will result in a denial to accept the position by default." Id. According to Plaintiff, the letter was hand-delivered by Michael Hammig on March 9, 2005. Plaintiff's Response at 4. Plaintiff asserts that the March 12th deadline to respond regarding her "bumping" rights provided insufficient time for Plaintiff to consider relocating for a position that was approximately 210 miles from her home. Id. at 7.

Following her receipt of the termination letter, Plaintiff sent two memos and an email to Jerry

Knighton in the Office of Access and Equity, alleging that her termination was in retaliation for a Discrimination Charge she filed with the EEOC in 2001, and asking that her termination be investigated. Ex. E1 to Plaintiff's Response. She also sent an email requesting pertinent information relative to her termination. Id. Plaintiff had not received any responses to her correspondence as of the date of her termination.

On April 14, 2005, Plaintiff filed a Charge of Discrimination with the EEOC, alleging that the termination of her position was in retaliation for a previous EEOC charge she filed in May 2001.[2] On July 14, 2005, the EEOC dismissed Plaintiff's charge and issued a Notice of Right to Sue. Ex. 2G to Defendant's Response. This action followed on September 20, 2005.

### III.  STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita

---

[2] In the May 2001, Charge of Discrimination, Plaintiff, who is black, alleged that a white co-worker, serving the same job duties as Plaintiff, was hired in at a higher salary than Plaintiff. Ex. A3 to Plaintiff's Response. In July of 2001, the parties reached a settlement agreement in connection with the EEOC charge wherein Clemson agreed (1) to pay Plaintiff a certain amount as a correction in salary for the one year period prior to July 20, 2001; (2) to upgrade Plaintiff's Fiscal Technician I position to Fiscal Technician II and increase her salary accordingly; and (3) not to retaliate against Plaintiff for filing the EEOC complaint. Marcus Aff. at ¶ 14.

Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").  To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings.  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any."  Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.    DISCUSSION**

Plaintiff alleges that her termination in April of 2005 was in retaliation for a Charge of Discrimination she filed with the EEOC in May of 2001. Title 42, Section 2000e-3(a) of the United States Code provides, in relevant part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). In order to establish the requisite causal connection, plaintiff must proffer evidence which establishes that she would not have been terminated but for her protected activity. Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 755 (4th Cir. 1996).

Plaintiff meets the first two elements of a prima facie case of retaliation: she engaged in protected activity when she filed the Charge of Discrimination in May of 2001, alleging race discrimination, and she suffered an adverse employment action when her position was eliminated and she was terminated from employment. However, Plaintiff fails to establish that a causal connection existed between her filing of the EEOC Charge in 2001 and her termination in 2005. In her Response, Plaintiff lists the following exhibits as establishing there was a casual link between the protected activity and the adverse employment action (see Plaintiff's Response at 13):

(1)    **Exhibit P, Page 2**:  Page two of Exhibit P is the second page of an exchange of

emails, dated June 12 and 13, 2003, among Plaintiff, Chris Robinson, and Corey Risch. The exchange of emails reveals that both Robinson and Plaintiff asked Risch when he was planning to send work to Plaintiff and Risch responded that the work was forthcoming, but it was taking him a while to get it ready. Plaintiff asserts that this exhibit shows that Risch stopped sending Plaintiff work and stopped responding to her requests for work.

(2) **Exhibit S**: Exhibit S is an exchange of emails, dated March 15, 2005, through April 12, 2005, between Plaintiff and Chris Robinson. Plaintiff informed Robinson that her position had been eliminated and that she had not been given any work since he left. She also informed him that "S. Coker" had not worked from the Florence office since he left although she still had some personal belongings there. Robinson apologized that he could not help her but advised that he was unaware of anything that went on after he resigned.

(3) **Exhibit N2**: This exhibit is Defendant's Answers to Plaintiff's Interrogatories. According to Plaintiff, this exhibit indicates that consultants sent their work directly to the other Fiscal Technician although it was supposed to be sent to the Data Processing Center and processed randomly.

(4) **Exhibits D1 and D2**: Exhibit D1 is Plaintiff's termination letter. Exhibit D2 is a Budget Update dated February 25, 2005, from John Kelly, Vice President for Public Service and Agriculture, indicating that the South Carolina House Ways and Means Committee adopted a recommendation for $2,753,047 in additional base funding for PSA. Plaintiff asserts that these exhibits show that there was not a lack of funding

        for Plaintiff's position as alleged in the termination notice.

(5)   **Exhibit J1**: This is a copy of the letter submitting the RIF Plan. Plaintiff argues that the RIF Plan was unauthorized because the letter was not signed and, thus, the elimination of her position was unauthorized.

(6)   **Exhibits J2, A1, C, D1**: Exhibit J2 is the RIF Plan and the letter approving the RIF Plan as procedurally correct. Exhibit A1 is an internet print out about Clemson Extension and South Carolina Farm Management Associations and an email announcing that Toby Boring is moving his office to the Greenwood County Extension Office. Exhibit C is an internet print out about Clemson's Public Service and Agriculture Administration. Exhibit D1 is Plaintiff's termination letter. According to Plaintiff, these exhibits show that the allegedly approved Reduction in Force was not applicable to Plaintiff's position as Plaintiff's position was with Public Services.

(7)   **Exhibit D1**: This is Plaintiff's termination letter. Plaintiff claims that it shows Defendant's non-response to her correspondence concerning her termination.

(8)   **Exhibit I1**: This exhibit is a letter, dated May 11, 2005, to the EEOC from Lawrence Nichols, II, Chief Human Resources Office, regarding Plaintiff's April 2005 Charge of Discrimination. In the letter, Nichols asserts, among other things, that contrary to Plaintiff's allegation, someone did respond to Plaintiff's email regarding her termination and a copy of the email is attached to the letter. Plaintiff argues that the attached email was fabricated because the date was cut off and it was actually sent after Plaintiff's last day of employment. Plaintiff also asserts that Defendant

-10-

>contradicts itself numerous times in the letter.

(9)     **Exhibits N1 and N2**: Exhibit N1 is Defendant's Answer. Exhibit N2 is Defendant's Answers to Plaintiff's Interrogatories. Plaintiff claims there are inconsistencies between the two documents.

A review of these exhibits, in the light most favorable to Plaintiff and in conjunction with the other exhibits and Plaintiff's Response, fails to reveal a causal connection between her termination and her May 2001 Charge of Discrimination. To establish the requisite causal connection, Plaintiff must proffer evidence that establishes that she would not have been terminated but for her protected activity. Hopkins, 77 F.3d at 755. At most, Plaintiff's evidence reveals that Defendant's reasons for eliminating her position were inconsistent with her understanding of which Department her position fell under and her understanding of the budget at the time of her termination. Such a showing is insufficient to establish that she would not have been terminated but for her Charge of Discrimination in 2001.

Furthermore, although "temporal proximity" can provide proof of causation when the adverse employment action occurs in "very close" proximity to the protected activity, see Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001), such proximity is not present in this case. Although Clark does not establish the outer boundaries for when temporal proximity should be considered "very close," it does cite examples of cases where three and four months between the protected activity and the adverse employment action were insufficient to alone establish causation as a result of temporal proximity. Id. Plaintiff's termination occurred nearly four years after her protected activity. Therefore, she must establish something more than just the fact that the termination occurred after the protected activity. Because Plaintiff has failed to do so, she has failed to establish

a prima facie case of discrimination.

However, even if Plaintiff could establish a causal connection between her Charge of Discrimination in 2001 and her termination in 2005, Defendant has proffered a legitimate non-retaliatory reason for her termination.

Once Plaintiff establishes a prima facie case of retaliation, the burden shifts to Defendants to produce a legitimate, non-retaliatory reason for the adverse employment action suffered by Plaintiff. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Defendant asserts that Plaintiff's position was terminated due to budgetary constraints, Chris Robinson's resignation, and the closing of the office in Florence. Furthermore, the proper procedures were followed by Defendant in terminating Plaintiff's position. In November of 2004, Hammig recommended a Reduction in Force due to the above cited reasons. Plaintiff's position was recommended for termination because she had the lowest number of retention credits of the four employees in her competitive class. A proposed RIF Plan was submitted to the Budget and Control Board's Office of Human Resources for review and approval on January 26, 2005. The Budget and Control's Office of Human Resources advised that the proposed RIF Plan was approved as procedurally correct, and Plaintiff was advised by letter dated March 2, 2005, that her position would be eliminated effective April 8, 2005. Plaintiff was also offered the opportunity to "bump" into one of two Fiscal Technician II positions available in Clemson, South Carolina.

Because Defendant has met its burden of producing a legitimate non-retaliatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to demonstrate by a preponderance of the

evidence that the legitimate reason produced by Defendant is not its true reason, but pretext for retaliation. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000). Throughout the burden shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)[3], the ultimate burden of proving that Defendants intentionally retaliated against Plaintiff remains at all times with Plaintiff.

Plaintiff has failed to submit any evidence establish that Defendant's legitimate, non-retaliatory reason for her termination is merely pretext for a retaliatory reason. As stated above, at most, Plaintiff's evidence reveals that Defendant's reasons for eliminating her position were inconsistent with her understanding of which Department her position fell under and her understanding of the budget at the time of her termination. It is outside the province of this Court to determine whether Plaintiff's termination was wise, fair, or just. See DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998) ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). "Proof that the employer's proffered reasons are unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason . . . is correct."

---

[3]The McDonnell Douglas burden shifting scheme applies in analyzing retaliation claims under Title VII. Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir.2000).

Reeves, 530 U.S. at 146-47. "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation" of why she was terminated. Id. Plaintiff's explanation of why she was terminated is that Defendant retaliated against her for filing an earlier Charge of Discrimination. However, Plaintiff's evidence is insufficient to establish that she would not have been fired but for her Charge of Discrimination in 2001, and no reasonable jury could conclude as much. Again, it is not for this Court to decide whether Plaintiff's termination was fair, but only whether Defendant retaliated against Plaintiff as a result of her actions in 2001. The undersigned concludes that Plaintiff's termination was not in retaliation for her Charge of Discrimination and that, as such. Plaintiff's claim should be dismissed.

## V.     CONCLUSION

For the reasons set forth above, it is recommended that Defendant's Motion for Summary Judgment (Document # 55) be granted, Plaintiff's Cross-Motion for Summary Judgment (Document # 58) be denied and Plaintiff's Motion for Summary Judgment (Document # 74) be denied.

In addition, Plaintiff also has pending a Motion for Correct Transcript or Refund (Document # 49) and a Motion for Refund (Document # 52). Although these are not dispositive motions, because they involve allegations against the undersigned, a recommendation is being entered on these motions rather than a ruling. Although Plaintiff's first motion is entitled Motion for Correct Transcript or Refund, she actually seeks a copy of the official electronic sound recording from the October 2, 2006, hearing with the undersigned or a refund of the $66.00 she paid for the transcript of the hearing. In her subsequent motion, Plaintiff indicates that she received a copy of the official electronic sound recording. Thus, it is recommended that Plaintiff's Motion for Correct Transcript

or Refund (Document # 49) be deemed moot. In Plaintiff's second motion, she claims that the sound recording she received is fictitious and requests a refund of the $26.00 she paid for the audio CD. The undersigned has reviewed Plaintiff's motion and finds it to be without merit. As such, it is recommended that Plaintiff's Motion for Refund (Document # 52) be denied.

If the district judge accepts the recommendation as to Defendant's Motion for Summary Judgment, all other pending motions will be moot.

                                                  s/Thomas E. Rogers, III
                                                  Thomas E. Rogers, III
                                                  United States Magistrate Judge

August 1, 2007
Florence, South Carolina


**The parties' attention is directed to the important notice contained of the following page.**